UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREAM, INC., ROOR INTERNATIONAL BV, <br><br> Plaintiffs, <br><br> v. <br><br> BLOW AND TELL CORP., <br><br> Defendant. | No. 2:18-cv-03056 JAM AC <br><br><br> FINDINGS AND RECOMMENDATIONS |

Pursuant to Local Rule 302(c)(19), this matter came before the court on May 1, 2019, for hearing of plaintiffs' motion for default judgment. ECF No. 23. Attorney Imran Vakil appeared telephonically on behalf of plaintiffs. Defendant did not appear, and the motion was taken under submission.

Upon review of the motion and the supporting documents, and good cause appearing, THE COURT FINDS AS FOLLOWS:

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2018, plaintiffs Sream, Inc. ("Sream") and RooR International BV ("RIBV") (collectively "plaintiffs") brought a complaint against defendant Blow and Tell Corporation ("BATC" or "defendant")—a since dissolved California corporation—for trademark infringement in violation of 15 U.S.C. § 1114(1), trademark counterfeiting in violation of 15

1

U.S.C. § 1116, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair competition in violation of California Business and Professions Code § 17200 *et seq*, and common law unfair competition. ECF No. 1 at 11-16.  According to the complaint, plaintiff RIBV is the owner of three federally registered "RooR" trademarks ("RooR Marks").  Id. ¶¶ 6, 12, Ex. B.  The marks were registered to their creator, Martin Birzle, in 1999, 2000, and 2009.  Birzle retroactively assigned to RIBV all rights to the RooR Marks, and the assignment was duly recorded with the United States Patent and Trademark Office ("PTO") in January 2018.  Id. ¶¶ 9-12, Exs. A & B. Plaintiff RIBV is thus the owner of the following three trademarks registered on the Principal Register of the PTO:  U.S. Trademark Registration No. 2,235,638 for the word mark "RooR" and its logo in association with goods in international class 21, including glass bowls, beverageware, boxes, statues, and plates; U.S. Trademark Registration No. 2,307,176 for the word mark "RooR" and its logo in association with goods in international class 25, including various types of clothing, and class 34, including "smoker's articles, namely, cigarettes, cigars, tobacco pouches, humidors, tobacco spittoons, chewing tobacco, smoking tobacco and matches"; and U.S. Trademark Registration No. 3,675,839 for the word mark "RooR" and its logo in association with goods in international class 34, including "smoker's articles, namely, glass pipes, bongs, water pipes, water pipes of glass."  Id. at 27-29 (Ex. B).

Since 2013, pursuant to a License Agreement, plaintiff Sream has been the exclusive licensee for the RooR Marks within the United States and has been granted all rights to sue to obtain damages and injunctive relief for infringement of the RooR Marks in this country.  Id. ¶¶ 13-16. With this License Agreement, Sream manufactures glass water pipes under the RooR Marks and markets and distributes other smoker's articles in association with the RooR Marks. Id. Plaintiffs contend that Sream's RooR branded products are made from high-quality materials and offer a superior smoking experience.  Id. ¶¶ 10, 17.  Therefore, consumers are willing to pay higher prices for RooR branded products:  a RooR branded water pipe sells for $300 or more, whereas an equivalent non-RooR product would sell for less than $100.  Id. ¶ 20.  This makes RooR branded products targets for counterfeiting by unauthorized store owners who can affix a nearly identical RooR logo to their products and reap "significant illegitimate profits."  Id. ¶ 21.

Plaintiffs allege that (at the time they filed the complaint) defendant was a California corporation doing business as "Blow and Tell" and operating a retail smoke shop in Sacramento, California. Id. ¶ 7. Plaintiffs allege that defendant has engaged in the unauthorized sale of water pipes bearing one or more of the RooR Marks, which were neither made by plaintiffs nor by an authorized manufacturer. Id. ¶ 23. In the course of their investigation of this case, on December 9, 2015, plaintiffs' licensed private investigator traveled to defendant's store, where he observed "several pipes on the shelves with a ROOR logo that he believed to be fakes." ECF Nos. 1 ¶¶ 24-25; 23.2 ¶¶ 4-7 (Ex. D). The investigator made a test purchase of one glass water pipe with a RooR label, for $47.96, which was later verified to be counterfeit. Id. Photographs of the purchased pipe and receipt are attached to the complaint and to the investigator's declaration. ECF Nos. 1 at 31; 23.2 at 6-7. Between July 2016 and October 2018, plaintiffs' counsel sent five letters to BATC, informing it of the test purchase and demanding that defendant cease the sale of its infringing products and provide an accounting of its past sales of such products. Defendant failed to respond or otherwise cooperate. ECF No. 23.3 at 2.

A summons and complaint were served on defendant on December 4, 2018. ECF No. 4. On December 11, 2018, defendant filed with the California Secretary of State a request to dissolve BATC, and in subsequent court filings BATC's former owner has indicated that the corporation has been dissolved. ECF Nos. 6.1 at 5; 13; 20. On December 17, 2018, defendant's former owner—a non-lawyer—filed an answer on behalf of BATC. ECF No. 5. On plaintiffs' motion, the court struck the answer pursuant to D-Beam Ltd. P'ship v. Roller Derby Skates, Inc., 366 F.3d 972, 973–74 (9th Cir. 2004) (corporations must appear in court through an attorney), and gave defendant until March 1, 2019 to retain counsel and file an answer on behalf of the corporation. ECF Nos. 6, 15. No answer has been filed, and no attorney has made an appearance on behalf of defendant. Plaintiffs moved for entry of default on March 4, 2019. ECF No. 20. The clerk entered default on March 6, 2019, and plaintiffs moved for default judgment the same day. ECF Nos. 21, 23. Defendant did not respond to the motion for default judgment and has not otherwise formally appeared in this case.

////

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (citation and quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's

default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

*i. Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiffs would face prejudice if the court did not enter a default judgment. Defendant is no longer in business, so prospective injury is unlikely. However, absent entry of a default judgment, plaintiffs would be without recourse for recovery in light of defendant's failure to respond. Accordingly, the first Eitel factor favors the entry of default judgment.

*ii. Factors Two and Three: Merits of Claims and Sufficiency of Complaint*

The merits of plaintiffs' substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Plaintiffs seek entry of default judgment on their claims of trademark infringement in violation of 15 U.S.C. § 1114(1), trademark counterfeiting in violation of 15 U.S.C. § 1116, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair competition in violation of California Business and Professions Code § 17200 *et seq*, and common law unfair competition.

Although plaintiffs have alleged five distinct claims, "the essential elements of the federal claims are identical and if met with adequate evidence are sufficient to establish liability under the state law claim[s] as well." Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (referring to 15 U.S.C. §§ 1114(1), 1125(a)(1) and Cal. Bus. & Prof. Code § 17200) (citing Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999)); see Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 631-32 (9th

Cir. 2008) (noting that claims for trademark infringement, false designation of origin, and unfair competition are "subject to the same test"); Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims under the Lanham Act."). Therefore, the undersigned jointly addresses all of plaintiffs' claims under the standard for trademark infringement.

To state a claim for trademark infringement the complaint must allege that the plaintiff: "(1) . . . has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." Dep't of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006). Here, plaintiffs made the requisite allegation of protectable ownership in their complaint and supported the allegation with sufficient evidence. Plaintiff RIBV is the registered owner of the RooR Marks, which are registered on the Principal Register in the PTO. ECF No. 1 at 3-5, 25-29. See Brookfield Communications, Inc., 174 F.3d at 1047 (registration of the mark on the Principal Register in the PTO constitutes prima facie evidence of the validity of the registered mark and of owner's exclusive right to use the mark on the specified goods). Plaintiff Sream, as the exclusive licensee for the RooR Marks within the United States, with all rights to sue to obtain damages and injunctive relief for infringement of the RooR Marks, likewise has a valid, protectable interest in the marks. ECF No. 1 ¶¶ 13-16. See Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC, No. 17-cv-0756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (noting that while the Ninth Circuit has not addressed the question of whether the exclusive licensee of a federal trademark can have standing to sue for trademark infringement, most district courts in this circuit have found that they can so long as the licensing agreement both grants an exclusive license and rights tantamount to those of an assignee).

As to the second element, "[t]o prevail on a claim of trademark infringement under the Lanham Act, a trademark holder must show that the defendant's use of its trademark is likely to cause confusion, or to cause mistake, or to deceive." Multi Time Machine, Inc. v. Amazon.com,

6

Inc., 804 F.3d 930, 935 (9th Cir. 2015). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). In evaluating the likelihood of confusion, the court normally employs an eight factor test. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003). However, "[w]here . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987); see also M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1085 (9th Cir. 2005) ("When the alleged infringer knowingly adopts a mark similar to another's, we must presume that the public will be deceived."); Adobe Systems, Inc. v. Taveira, No. C 08-2436 PJH, 2009 WL 506861, at *2 (N.D. Cal. Feb. 27, 2009) ("Where a defendant knowingly adopts the plaintiff's mark with the intent to capitalize on plaintiff's reputation the courts may presume that the public will be deceived."); Shalabi, 352 F. Supp. 2d at 1073 ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing"). The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, taking the allegations of the complaint to be true, the defendant used images and names identical to or confusingly similar to the RooR Marks, and did so willfully to confuse consumers and aid in the promotion and sales of its counterfeit products. ECF No. 1 at 8-10. Because plaintiffs have sufficiently stated claims for trademark infringement, false designation of origin, and unfair competition, these two factors favor entry of default judgment.

*iii. Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal.

2003).  Here, plaintiffs seek damages of $200,000 plus attorney's fees and costs.  Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment.  See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J & J Sports Productions. v. Cardoze, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); see also Board of Trustees of the Sheet Metal Workers v. Vigil, No. C 07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); but see J & J Sports Productions v. Hernandez, No. 2:09-cv-3389 GEB KJN, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010) ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment).  As discussed below, however, the undersigned declines to recommend judgment in the amount requested.  Consequently, this factor does not weigh against the entry of default judgment.

*iv. Factor Five: Possibility of Dispute Concerning Material Facts*

The facts of this case are relatively straightforward, and plaintiffs have provided the court with well-pleaded allegations supporting their claims and affidavits in support of their allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Castworld Prods., Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Accordingly, this factor favors entry of default judgment.

*v. Factor Six: Whether Default Was Due to Excusable Neglect*

Upon review of the record, there is no indication that the default was the result of excusable neglect.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Plaintiffs served defendant with the summons and complaint.  ECF Nos. 1, 4.  The undersigned gave defendant's former owner

one month to retain counsel to defend the corporation, but defendant failed to do so.  Moreover, plaintiffs served defendant by mail with notice of their request for default judgment.  ECF No. 23.5 at 2.  Despite ample notice of this lawsuit and plaintiffs' intention to seek a default judgment, defendant failed to defend itself in this action.  Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

*vi. Factor Seven: Policy Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, although the undersigned is cognizant of the policy favoring decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiffs are entitled to the entry of default judgment against defendant and makes a recommendation to that effect.  What remains is the determination of the amount of damages to which plaintiff is entitled.

C. Terms of Judgment

   i. *Statutory Damages*

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Plaintiffs seek $200,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2), which provides that in a case involving the willful use of a counterfeit mark, the plaintiff may elect to recover, instead of actual damages and profits, statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  Id.  Otherwise, plaintiffs may recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services[.]"  15 U.S.C. § 1117(c)(1).

"The district court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Los Angeles News Service v. Reuters Television Intern., Ltd., 149 F.3d 987, 996 (9th Cir. 1998); see also Peer Intern. Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) ("The court is guided by what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like.").

> When determining the appropriate amount of statutory damages to award under § 1117(c), some courts have considered the following factors that guide the award of statutory damages under an analogous provision of the Copyright Act: (1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Coach, Inc. v. Diva Shoes & Accessories, No. 10-5151 SC, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011) (citing Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1237-38 (E.D. Cal. 2008)).

The undersigned infers from the allegations of the complaint and defendant's failure to appear, that the defendant's conduct was willful. See Kirakosian v. J&L Sunset Wholesale & Tobacco, No. 2:16-cv-06097-CAS(PLAx), 2017 WL 4022365, at *5 (C.D. Cal. Sept. 11, 2017) (noting that a party's failure to defend itself against allegations of trademark counterfeiting is indicative of willful trademark infringement). According to the declaration of plaintiffs' licensed private investigator, on his trip to defendant's store he observed "several" RooR water pipes that he believed to be counterfeit and made a test purchase of one water pipe with a RooR label, which was later verified to be counterfeit. ECF No. 23.2 at 2, 5. Plaintiffs argue that they were unable to establish damages with certainty because defendant refused to cooperate by providing sales records. They acknowledge that defendant "probably hasn't sold millions of counterfeit products," but clearly has sold "more than one unit." ECF No. 23.1 at 18-19. Further, plaintiffs assert that they have lost "millions of dollars between 2015 and 2017" as a result of counterfeit RooR products across the country; and that in California, their sales have declined "in excess of $1,200,000" over the same three-year period. Id. at 19.

In litigating cases nearly identical to this one, these same plaintiffs have routinely requested between $200,000 and $300,000 in statutory damages, and received damages awards ranging from $10,000 to $50,000. See, e.g. Sream, Inc. v. Singh, No. 1:18-CV-00987-DAD-BAM, 2018 WL 5819455, at *9 (E.D. Cal. Nov. 5, 2018) (findings and recommendations later adopted) (awarding $20,000 on evidence of one counterfeit water pipe sold for $14.41); Sream, Inc. v. Andy's Smoke Shop, Inc., No. 18-CV-1676-MMA (RBB), 2018 WL 5279130, at *8 (S.D. Cal. Oct. 23, 2018) (awarding $25,000 on evidence of one counterfeit water pipe sold for $129.60 and seven suspected counterfeits observed); Sream, Inc. v. Walsh, No. EDCV 16-2538-JGBKKX, 2017 WL 8230031, at *6 (C.D. Cal. Feb. 14, 2017) (awarding $10,000 based on the price differential between the real ($300) and counterfeit ($174.39) products; the likelihood that defendant possessed additional counterfeit goods; that counterfeit sales harm plaintiff's reputation and goodwill; and the requested permanent injunction required defendant to turn over all other counterfeit inventory to plaintiff for destruction); Sream, Inc. v. Hanoun, No. EDCV 16-01394-ABJCX, 2016 WL 11002361, at *4 (C.D. Cal. Oct. 28, 2016) (awarding $50,000 on evidence of violating one RooR mark on a single type of product, sold for $45); Sream, Inc. v. Elgawly, No. CV 16-840-R, 2016 WL 4967710, at *3 (C.D. Cal. Sept. 14, 2016) (awarding $50,000.01 on evidence of one counterfeit water pipe); Sream, Inc. v. Lavingia, No. ED CV16-00806 JAK (KKx), 2016 U.S. Dist. LEXIS 106540, at (C.D. Cal. Aug. 10, 2016) (awarding $25,000 on evidence of one counterfeit product).

In this case, the undersigned finds that a statutory damages award of $20,000 is appropriate. The only evidence submitted of a counterfeit good was a single water pipe purchased by plaintiffs' investigator for $47.96, far below plaintiffs' $300 valuation. Even considering the "several" other pipes the investigator observed, this record does not suggest that defendant sold counterfeit pipes on a large scale, or reaped great profit from them. Moreover, the allegations establish counterfeiting of only one type of product, and do not demonstrate that defendant infringed Registration Nos. 2,235,638 or 2,307,176 which apply to smoker's articles and general (non-smoker's) glassware. Additionally, given that since the filing of this action, defendant has been dissolved and is no longer in business, the need for individualized deterrence

is lessened.  While a significant damages award is warranted to deter others, and to punish defendant, a lower award is warranted in light of this defendant's inability to continue infringing post-dissolution.  Finally, plaintiffs' requested injunctive relief—which should be granted for the reasons discussed below—requires defendant to turn over all other counterfeit inventory for destruction, further reducing the need for greater deterrence.  See Walsh, 2017 WL 8230031, at *6.

Accordingly, the undersigned recommends that plaintiffs be awarded $20,000 in statutory damages.

### ii. Permanent Injunction

Plaintiffs also request a permanent injunction enjoining any further infringement, and requiring defendant to turn over all other counterfeit inventory to plaintiffs for destruction.  ECF No. 23.4 at 12.  15 U.S.C. § 1116(a) provides that a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."  A permanent injunction may be granted where the plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988).  Moreover, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."  Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989).  And "the public has an interest in the enforcement of federal statutes."  CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008).  In light of the fact that there is no hardship to the defendant in being enjoined from using an

identical mark to plaintiffs' registered mark, or turning over counterfeit products, the undersigned recommends that plaintiffs be awarded the requested injunctive relief.

*iii. Attorney's Fees & Costs*

Finally, plaintiffs' motion for default judgment seeks an award of attorney's fees and costs. ECF No. 23.1 at 21. "An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional cases' of trademark infringement." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) (quoting 15 U.S.C. § 1117(a)). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."). An entitlement to reasonable attorney's fees may be found where the complaint alleges that the defendant's conduct was willful and the defendant's default has been entered. See Derek, 528 F.3d at 702 ("Thus, all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks. This default sufficiently establishes Andrew's entitlement to attorneys' fees under the Lanham Act.").

As noted above, however, the award of attorney's fees must be reasonable. See Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 622 (9th Cir. 1993) ("the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate"). In this regard, Local Rule 293 requires a party seeking an award of attorney's fees to submit an affidavit addressing certain criteria that the court will consider in determining whether an award of attorney's fees is appropriate.

Here, although plaintiffs' counsel has filed a declaration in support of his request for attorney's fees, listing his firm's billing rates and the hours spent on this matter, see ECF No. 23.3 at 3-4, the affidavit does not address all of the criteria required by Local Rule 293(b)(4), (c). Plaintiffs have likewise failed to submit a bill of costs conforming to 28 U.S.C. § 1924 and Local Rule 292. Accordingly, the undersigned recommends that plaintiffs' request for attorney's fees and costs be denied without prejudice to renewal.

13

## III. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS THAT:

1. Plaintiffs motion for default judgment (ECF No. 23) be GRANTED in part;
2. The court enter judgment against the defendant on the complaint's claims of trademark infringement, trademark counterfeiting, false designation of origin, and unfair competition;
3. The court award statutory damages pursuant to 15 U.S.C. § 1117 in the amount of $20,000 to plaintiffs;
4. Defendant be permanently enjoined as follows:

   Defendant, and defendant's agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concern or participation with Defendant are permanently restrained and enjoined from infringing upon the RooR Marks[1] directly or contributorily, in any manner, including:

   (a) import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit RooR product identified in the complaint and any other unauthorized RooR product, counterfeit, copy or colorful imitation thereof;

   (b) assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraph (a) above.

5. Defendant be ordered, pursuant to 15 U.S.C. § 1118, deliver up (at defendant's cost) to plaintiffs for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the RooR Marks;
6. The court deny plaintiffs' request for attorney's fees and costs without prejudice to renewal; and

---

[1] United States Trademark Registration Nos. 3,675,839, 2,307,176, and 2,235,638.

7. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: May 2, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE